Chief Justice Bibb

dissenting from the decision of the majority of the court, delivered his own opinion, to the following effect:

Mr opinion is, that the judgment of the general court ought to be affirmed.
The objections taken to the judgment are confined by the bill of exceptions, and by the opinion which has been formed by a majority of this court—
Dissent of. . Ch. J. Bibb, from the opinion of the court, that in a motion of the state against a collector of taxes, no proof of payment or tender at the the treasury, but the quietus of the auditor, is an ayailable defence.
First: To the propriety of setting aside the judgment which had been rendered by default, to let in a defence.
Secondly: To the propriety of allowing the clerk a credit for the three warrants drawn by the Auditor of public accounts, on the Treasurer of the Commonwealth, in favor of William T. Barry and. James Haggin, respectively, No. 264, 265 and 267; on account pf their salaries as Judges of the court of appeals.
As to the first, it is agreed on all hands, that the cause for setting aside the judgment, was amply sufficient, provided the defence disclosed in the affidavit, was an allowable and available defence to the motion. I dismiss all question as to the exercise of discretion in the judge, in opening the judgment; not only because I think the judge exercised that discretion very properly, but because I do not think that a writ of error or appeal lies to incidental orders, as granting continuances, setting aside judgments by default, and such like, which are nob final. The appeal, or writ of error, lies only to the final judgment. So that the question turns exclusively on the merits of the judgment as finally rendered.
The second, question resolves itself, in my opinion, into a plain inquiry whether the warrants allowed by the judge as a credit, were by law receivable at the public treasury, upon the tender thereof, made by the appellee, in payment of his account with the Commonwealth. , It is distinctly stated in the hill of exceptions, that those warrants had before the notice of this motion, been presented to the Treasurer, and that he had refused to receive them. This fact does not depend upon the affidavit of the appellee, in shewing cause for opening the judgment by default. It is stated as a fact appearing on the trial, and admitted as a fact.
That these warrants were receivable at the public treasury, and that they ought to have been received by the Treasurer, and passed to the credit of the appellee, is plain. The act-of 1793, 1 Digest, 133, *329 leaves no room for doubt. It is in these words: “x\ll warrants which are,, or shall be issued by the Auditor, on the Treasurer, for any money whatever, shall be receivable in discharge pf any taxes hereafter to be collected within this Commonwealth.”
Dissent of Ch. J. Bibb.
The account of the Commonwealth, for which this motion was made against the appellee, was for taxes; it is so stated in thg notice of the Auditor; it so appears on thp account as filed by the Auditor. When these warrants were tendered to the Treasurer, it was his duty to have received them from the clerk, and to have given him credit for them as for sp much paid, so as to enable the clerk to close his account by paying the residue, and so obtain his quietus. This is not denied in the opinion of the majority of the court as formed; but the question is made to turn, on the propriety of receiving a plea of tender or discount from the appellee, upon the motion against him, or upon the propriety of allowing a discount or tender, in any case against the Commonwealth. ■ And the opinion from which I dissent, comes to the conclusion, that no such defence is allowable; and farther, that a quietus, signed by the. Auditor, is the only available defence. ■
True it is, that the law does require that the collectors of thé revénue shall settle their accounts with the Auditor, and pay the balance due into the treasury; the Treasurer is required to make out a receipt “for any sum or sums” of money paid, and this receipt is to be carried by the Treasurer himself to the Auditor, the Auditor is required to make out his “receipt or quietus therefor, and the Treasurer shall deliver the said receipt or quietus to the person who shall have paid him the sum or sums specified therein.” i$ Digest, 1222, Sec. 14.]
What if the Treasurer, by mistake of his duty, or from' other causes, will not receive, will not make his receipt to the Auditor, will not obtain from the Auditor the quietus, and will not deliver it to the party entitled? Must this refusal of the Treasurer, or of the Auditor, to perform their re *330 spective duties, subject the collectors of the revenue to a judgment with interest thereon, after the rate of eighteen per centum per annum until paid,” as given by the statute against a collector who fails to settle his accounts and obtain his quietus? Is it just, that because the Treasurer refused to receive of Rodes these warrants, when tendered, that Rodes should be subjected to a judgment for the amount of those warrrants, amounting to fifteen hundred dollars, together. with an interest thereon after the rate of eighteen per centum per annum from the 5th December preceding the motion until paid? It is-hut to state these propositions, and the injustice of rendering judgment against the collector of taxes, because the Treasurer, has refused to receive payment when tendered, and to perform his duties in relation to obtaining a quietus for “any sum or sums of money,” is at once perceived. It requires no argument to explain it; the injustice strikes at once. The law supposes the Treasurer will perform hjs duty, and upon that supposition, the judgment and penalty of eighteen per centum per annum, is inflicted upon a collector who fails to obtain his quiemitís. The opinion of the court proceeds upon the hypothesis, that the statutes imperiously require the courts of justice to render judgment against the collector, in case a quietus is not produced to the court; that no tender or discount is to be gone into on the trial of the motion; that this is necessary to preserve the revenue and the mutual checks between the Auditor and the Treasurer. The statutes, in my opinion, speak a different language.
Dissent of - Ch. J. Bibb.
The statute which prescribes the duty of the Auditor in relation to the public accounts, (1 Digest, 129,) uses this language; “to audit and enter in account all other demands for money in the treasury, made under authority of any law; to settle the accounts of all public debtors, and of all collectors of any revenue, or tax, levied by the General Assembly and payable to the Treasurer, or of .any money <lue to the public; to call upon such debtors t,o render accounts at proper times, and on their failure so to do, to instruct the attorney general to institute proceedings at law for compelling them to justice, and though it should appear on trial, that the *331 defendant oweth' no balance to the public, yet his having failed to render an account to the Auditor, and to take from him his quietus, shall subject him to the payment of all costs incurred, by such proceedings, to the Commonwealth.”
Dissent of Ch. J. Bibb.
“Justice” — “trial”—“that the defendant oweth no balance,” are words employed by this act. These •are all inconsistent with the idea, that the courts are to be machines for registering the account of the Auditor, without regard to “justice,” without “trial,” without inquiry whether “the defendant oweth.” The very reason why the Auditor is to move against the collector, is that he has failed to obtain “his quietus;” and yet notwithstanding no such quietus exists, the act supposes that it may “appear on the trial, that the defendant oweth no balance;” if the failure to shew a quietus in court, is to he binding on the court to render judgment against the defendant, for the full amount claimed and stated by the Auditor, without discount or abatement, then the provision respecting what is to be done, as to costs, where it shall appear that the defendant “oweth. no balance to the public,” and the other parts of this act are above quoted, are idle words without meaning. The words “failing,” and “failure,” as used in this act, and in the acts giving the motions against sheriffs, clerks and other collectors of revenue, are all significant of and mean, “neglect,” “to be defi-cient in duly;” this is the legal sense of “failing” and “failure,” as applied to the officers of the revenue; a neglect of their duty, a deficiency on their part to perform what is. incumbent upon them to perform, draws down the judgment and the penalty of eighteen per centum thereon. The acts do not mean to subject the collectors, for a failure of the-Treasurer to perform the duties injoined upon him. which are necessary to a quietus. The failure of the Treasurer to receive the warrants tendered by Rodes the clerk, and the failure of the Treasurer to pass his receipt therefor to the Auditor, the failure of the Treasurer to procure the quietus and deliver it to the appellee, as required of the Treasurer by the statutes which prescribe his duties, are the causes why Rhodes could not produce the quietus, and thereby forestall and prevent the motion; he *332 bad tendered these warrants in payment of his ae* count, but the Treasurer refused this payment.
Ch^J^Bibb.
jf nothing but a quietus from the Auditor will do for a defence to the- motion against a collector of the revenue, then after the collector shall have actually paid his account to. the Treasurer, the Treasurer by failing to carry his receipt therefor to the Auditor, or the Auditor by failing to make out his-receipt, or quietus therefor, would subject the collection to judgment for-principal and interest. The statutes in my opinion cannot bear any such interpretation.
The statute now in force, and under which this .motion is made, speaks a very different language. The statute after making it the duty of the Auditor to move the general court for judgment against any sheriff or collector who shall not within, the time specified, obtain a quietus; and also against his sureties, proceeds thus;
“Arid á memorandum shall Be lodged by the Auditor with the clerk of the gene’ral. court, on or before the third day of the term, mentioning what sheriffs and ‘collectors he means to move against, arid the days ‘the motions are to be made against each, and the said court shall proceed arid enter judgment ,jfqr what may appear unpaid against such sheriff or collector, and his securities, as heretofore (directed by law."on moti’óns, except that no notice of any kind shall be required, and except that such judgments shall be for the principal sum due, with an interest at the rate of eighteen per centum per annum, from the time the same become due until paid, in lieu of the., damages arid. Interest heretofore directed by law; but nothing in this act contained shall prevent a sheriff or collector from appearing and máking any Uefehce which, he could make before the passage of this act.”
The same section proceeds to authorize a motion, against any clerk and his securities, who “shall fail to pay into the treasury any money by him payable there” — “in the same manner prescribed by this act for motions against sheriffs, and the like proceeding *333 hliall be had, and judgment rendered, with the like per cent per annum, as directed herein against sheriffs.” (2 Digest, 1087; 3 Litt. Laws, 310.)
jj;ssent 0f ch. J. Bibh.
I have looked into all the statutes relating to the revenue, and the remedies against sheriffs and codectors of the revenue, which preceded the act of 1805, just quoted, andthose which succeed; and I can find not one, which, in my-judgment, gives any color to the idea, that the sheriff or collector is restrained upon suit or motion, from any just defence, legal or equitable, which was allowable by plea or evidence at common law. Those which have any hearing on this subject of remedy by suit on the bond, or by motion, against Sheriffs, collectors, or their deputies are the following: 1 Litt. Laws, chap. X. p. 70, which gives remedy against a delinquent sheriff, by motion on ten days notice, for the amouht 'dué, with fifteen per centum damages, together with 'an .interest of five per cent on the whole amount, and costs of motion, and expenses of giving notice; same yol. p. "S3, which gives remedy by action on the bond, or by motion on ten days notice, against the obligors, for breach of the condition on the bond; same vol. p. 214, >p. 581-660-661-669; vol. 2d, p. ’322-323. :
The defértCé to amotion ór'tó asuit against a sheriff or collector, is not restrained by any prohibitory act; and in my opinion every .just defence, 'to the motion, or tothe suit by the Auditor on behalfofthe Commonwealth,"by evidence, or by plea, and evidence under the general issue, or any special plea, either'in bar, or in discount as at common law, and of payment, Or'discount-in nature of payments, for claims and warrants authorized to be taken by the ■•sheriffs and collectors in payment of the revenue by various statutary provisions, are all1 allowable and unrestrained. A tender to the Treasurer, of money or warrants or other allowances, which the statutes permit and authorize the sheriffs or collectors to take and demand credit for, and refusal by him; or tender of claims to the Auditor, in settlement of the account, which the sheriff or collector is entitled to "have .allowed at the AiulitdrVbffice, so as to strike *334 tbé balance to be certified to tlie Treasurer, to be there paid, if refused, is an allowable and available defence to a motion or suit. I see nothing in the statutes which puts the sheriffs or collectors of the revenue in the power of the Auditor or the Treasurer, by their mistakes, misjudgments, or failures in their duties, to be subjected to unjust judgments with heavy interest, by way of penalty or damages.
i’>issent of Cli. J. Bibb.
It is said, a tender and payment into court will derange the accounts of the Treasurer and Auditor, and the checks of the one office upon the other. I do not see how. The Commonwealth is represented in court'by the Auditor and the Attorney General; either of those officers can inform the Treasurer, of the money paid into court;, the Treasurer is the proper officer of the government to withdraw the money; and upon taking it out of court, td make' his receipt therefor; to pass a receipt to the Auditor, take a quietus therefor, and deliver it to the sheriff, or collector, or defendant to the suit, entitled to it, as in any other case of payment- Thus the accounts at the Treasury office, and at the Auditor’s office, will stand as if the Treasurer had performed his duty in’ the first instance, as Soon as the Treasurer withdraws these warrants and passes his receipt therefor into the Auditor’s office as, he is bound to do; and if he fails to do so, the records of the court, and the Auditor and the Attorney General are sufficient checks and safeguards upon the Treasurer. Are the accounts .at the Treasury office and at the Auditor’s office, more deranged by the payment into the general court, than by a judgment for tbe full amount and a payment thereof to the sergeant or to a sheriff upon execution? How docs the money get from the hands of the sheriff or sergeant, when collected on execution, into the Treasury? and how is it then accounted for?
I see nothing in the system of revenue adopted by the legislature, or in any act giving remedy against delinquent sheriffs, clerks, or other collectors of taxes, or revenue, which wears the appearance of intent in the legislature, to prevent any legal and just defence-. A court is defined to be “a place *335 where justice is judicially administered.” I see nothing in the statutes providing remedies against public debtors, which manifests a disposition in the legislature, to convert this court or any inferior into a place where acts of injustice, committed on collectors of the taxes and revenue, by an officer of the executiye department, are to be registered and sanctioned. I will not, by anticipation, discuss the authority of the legislative department of the government, so to abuse the judicial department as to command the judges to erect a court of Star Chamber, and to issue from thence precepts of oppression and injustice. In my opinion the legislature have not authorized the Auditor of public accounts to expect from the judicial department an unjust sentence in favor of the Commonwealth as plaintiff, founded on a mistaken sense of duty of any officer of the executive department. To institute proceedings at law against public debtors “for compelling them to justice,” without preventing them “from appearing and making any defence which he could make before the passage of the act,” are the expressions used by the legislature to convey their intentions and expectations; leaving to the courts of justice their full power to correct the mistakes and misconstructions of the Auditor and Treasurer. If the sheriff or other collector of the revenue does not settle and obtain his quietus, he is subjected to costs, “though it should appear he oweth no ballance to the public;” this, with other incapacities for office until their accounts are finally closed, are the safeguards provided; the Commonwealth pays no costs. And it does appear to me, to be in the yery teeth of the statutes themselves, to render judgment against the defendant, who was prevented by the Treasurer from obtaining his quietus, and who brings into court the payment tendered and refused by the Treasurer, and which the Treasurer was bound to receive.
Dissent of Ch-
Denny, attorney general, for the Commonwealth; JIaggin and Loughborough, for Rodes and securities.